Mr. Sarmento presents to the Court a tapestry of fact which we believe is sufficient to rule out summary judgment in this case. There are three issues of law that I would like to first address where we take a different position as to the law than does our opponent. The first of these has to do with the definition of disability and how it ties into this case. The second point has to do with qualification and how that ties into this case. And the third has to do with relevance and who bears the burden of proof on that particular issue. As to the first issue, we have briefed all three of the definitions of disability. We have briefed this case as disability, actual disability regarded as, and disability record of. And the definitions under the statute intertwine and do overlap. But to my way of thinking, this case is a paradigm record of disability case, and I would like to emphasize that this morning. Where we differ on the law is that Henry Schein, Inc. believes that there must be a nexus between all of the various disabling conditions that Mr. Sarmento suffered, of which there were three, two having to do with spine disease and one having to do with a heart condition and bypass surgery and then a number of other problems that followed after the surgery. In my view of this case, the disability that the record is based on, which is the 1991-1992 spine condition, which caused a lengthy and severe illness and aftermath, best described in Mr. Sarmento's affidavit, I think at about page 38 of the record, was that his spine was disabled. So if that was the only disabling condition, that in itself, because of its duration, because of its severity, because of the after effects and the inability to perform major life activities substantially for a long period of time, approximately two years afterwards, upon that condition itself, record of disability would rest in this case, especially since Mr. Sarmento's condition was so severe. The second spine episode, which you argue that the disability is a life job disability, I mean he can't perform any work, because he was offered another position for which he was qualified that didn't require any lifting except the telephone receiver maybe, but you can give him a pair of earphones and a speaker and he can answer the questions that people have from the whole supply unit, right? Your Honor, the clear testimony in this case indicates, and here there is a genuine issue of material fact, if Henry Schein still contends to the contrary, which we don't think they really do, there is clear evidence both from Mr. Sarmento and from the purported offeror, who was Mr. Mazza, and his clear testimony is on the record in this case that no offer was made. This job was not offered, nor were any of the other jobs that were clearly available offered. For example, Mr. Sarmento had every qualification to move into his supervisor's job. His supervisor actually was fired a few days before he was. That was a desk job. Mr. Sarmento had extensive experience in sales work and in other managerial work, so there was a broad class of jobs where he was basically regarded as being too disabled to perform. However, that goes to the issue of regarded as disabled. As far as the record of disability goes, at the time of the firing and I want to remind the Court that Mr. Sarmento was fired from a modified job, which he had held successfully for six months before the firing. So at the time of the firing, there was a record of disability. The record of disability was based on the 1991-1992 spine problem, the heart problem in particular, and the other spine problem episode, of course, that was the lead-in to the firing. Did he have at that point in time the capacity to lift and put in place all the dental equipment that he was working on? He had the capacity. All is the word I use. Each and every piece of dental equipment. Typically the equipment was not lifted, Your Honor. Typically mechanical aids were used, such as wheels, tilting, dolly. He did not have to, either during the modified period or the period before the modification, he did not have to lift heavy things alone. There were always others to help. There was a partner, Mr. Fisher, who was in Reno, always available, and the two worked well as a team. The testimony of Mr. Efimov, who was the supervisor of Mr. Sarmento from just about exactly the time of the April 2000 lower back injury. Until the time of the firing, Mr. Efimov was the supervisor. He was installing dental equipment weighing in excess of 100 pounds, right? Very, very seldom, Your Honor. But he did. That was part of the job, wasn't it not? Part of the job was to install. Could he do that? Nobody could do that alone, Your Honor. Not he nor anyone else. That was not the way the job was set up. As far as the qualifications for the job, I would suggest that the court could look at this case in one of two ways, either of which I submit is favorable to Mr. Sarmento. When we look at qualifications, we're looking at something that under the statute is called the position. So we're looking at a job, not various jobs. Qualified means qualified to perform the position under the statute, with or without reasonable accommodation. The position in this case could be regarded as the job that Mr. Sarmento held during the last six months. It could also be regarded as the unmodified job that he held before then. I think the better view is for the court to regard the job as the job that was held at the time of the firing. Because otherwise, if a court is to look back through a series of jobs, creates a situation that is hard to define. I think the position under the statute really has to be defined as the position that was held when the adverse employment action took place. In this case, it's the modified job, which plainly states no lifting over 35 pounds. This is a job that was designed for Mr. Sarmento. It became his job, and Mr. Ephimoff, his supervisor, knew that that was his job. And I think, as I listened to your argument, and we're prepared to hear the arguments, what do you see the narrow issue before us today? The narrow issue, on the one hand, well, the narrow issue was, was this firing legitimate? Was this firing motivated? Yes, but in order to decide whether this firing was legitimate, what do we have to ask? We have to ask, was this, we know that this firing was done for physical reasons. The firing letter, which is on the record, states that. We know that the physical condition of Mr. Sarmento was because of the condition of his back. The court has to address the narrow issue under the very individual circumstances of this case. And the Sutton case in the Supreme Court asks that each of these cases be highly individualized in the judgment that is applied to it. But we need to address, was this firing discriminatory? And I would say we need to ask, was this based on his record of disability? Was this based on his record of disability? As far as his qualification, if we consider that the job, the position under the statute, is the unmodified job, there is still a genuine issue of material fact as to what the essential functions of the job were. Not what the functions were that were performed occasionally, but the essential functions. I believe I'm going over my time, and I had wanted to reserve a bit, but I do want to say I think the better view is to regard those functions as essential functions. As the position, as the modified position, since it was not accommodated, this was not, there had been no reasonable accommodation. Mr. Sarmento, both sides would agree, was never involved in the interactive process. There was no reasonable accommodation. Therefore, we're not talking about, if the court did regard that the modification was a reasonable accommodation, then there should have been another reasonable accommodation attempt before the man was simply suddenly fired. And then my third point is that Henry Schein believes that the burden of proof is on Mr. Sarmento to show that there was a pretext, but that is not true. Under the Mostafa case, once there has been a statement on the part of the employer, that the termination was referred to as a reasonable accommodation. And then the burden is on the employer to show the relevance of the physical condition to the position. And I don't think that this employer can do that. Thank you, counsel. Good morning, Your Honors. Charles Pouch on behalf of the defendant, Henry Schein. We'll simply put, Your Honors, this is not an ADA case. Jury Sarmento does not present a case cognizable under the Americans with Disabilities Act because he does not have a disability that is as defined by that act. Under any of the three prongs of that well-known definition of a reasonable accommodation, ADA defines disability as a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. It carries through the entire definition the substantiality requirement that exists in the first prong of the analysis. Now, apparently, in her argument this morning, counsel has abandoned the claims of the first two prongs of this analysis. She's not saying that he is disabled, and she's not saying that he was regarded as having such an impairment. She's focusing her argument on the last prong. I don't think she's abandoned it, but she chose to focus her oral argument elsewhere, so we don't ignore what's in the briefs, just because. As well, you may, I would focus in response on all three. Certainly, I think I would suggest, Your Honors, look at the supplemental excerpts of record that we submitted. If Your Honors were to read pages 40 through 49 of those supplemental pages, that's the testimony of Jerry Sormento himself, Gerald Sormento himself, wherein he himself testifies that he, I think, depicts himself as a rather healthy individual. Yes, in 1991, he had a neck injury. He was in traction for a bit of a time with respect to that neck injury. He fully recovered from that neck injury. He fully recovered from it. In 1997, he had quadruple bypass surgery. He fully recovered from that quadruple bypass surgery. By the year 2000, when he had this injury to his back, his lower back, he had fully recovered from both of those prior temporary disabilities. To say that this is a record of disability case, I think, stretches that concept past all case law that exists. The Nassau County case involved tuberculosis. An individual in that case, Arlene, had tuberculosis throughout the entire time span at issue. Twenty years earlier, he had been hospitalized for tuberculosis. Supreme Court, they noted that, that he had had several relapses of tuberculosis that led to his final discharge because of fear of contagion. That was the issue in that case. There's been no case where we've had a situation where minor injuries to unrelated body parts, which counsel tries to connect by the spine, amount to a record of an impairment. That's not been the case law from this circuit. That's not been the case law from any circuit to suggest that that amounts to a disability. What specifically is the company's position, that he's not disabled or that he had no physical problem? What is the company's position? The company's position, Your Honor, is that he is not disabled, of course, under the Americans with Disabilities Act, as it's defined. The company did take action in October of 2001 to terminate his employment because he could no longer do the very difficult job that he had. The job, as he himself, in his own words, in pages 40 to 49 of that supplemental record, he described it as a difficult, heavy lifting job. Big pieces of dental equipment, compressors, x-ray devices, some weighing 75, 100 pounds. He indicates he would often move those during the course of his employment. That job required his travel throughout the Mountain West region, 250 miles in each direction from Reno, and going to dental offices in remote locations, climbing stairs, a difficult job. Ultimately, when you get to that issue, I don't believe there's any question of fact either on the issue of whether he was otherwise qualified for the position that was at issue. Yes, the company, as counsel notes, modified the job description for time, as a temporary accommodation, to see if he could perform in a fashion that would allow him to, you know, keep his employment, but supervision determined that that wasn't possible. That that was impractical under the circumstances, given the remoteness of so many of these locations, and the difficulty of this job. There's testimony in the excerpts that indicates that, from Mr. Cemento himself, where he indicates that in some situations the dental offices were on the second floor, and you couldn't use assistive devices, he indicates on other occasions that you couldn't track the, use the dolly systems across certain types of floors in dental offices, as dentists, you know, are concerned about how their flooring looks. So it wasn't practical to maintain that temporary accommodation. As such, we believe also that that shouldn't be allowed to bootstrap him into a perception. The company tried something like that, does not amount to him being regarded as having an impairment. We believe this case is truly controlled by the Thompson v. Holy Family Hospital, and other cases from this circuit. Other plaintiffs, other plaintiffs have fared poorly under this analysis as well. The Gomez, Mickelson, Fredrickson, Cleveland, the cases cited by the district court, from the district courts around this circuit, have uniformly said that a lifting restriction of this sort, whether in one case it was a lifting restriction as low as 15 pounds, is simply not, is simply not a disability, is not an impairment that substantially limits a major life activity. So when this court in Thompson joined the course of decisions from other circuits, it was agreeing with the district courts throughout this circuit. Mr., we submit Mr. Sarmiento is just not an individual with a disability, as defined by the Americans with Disabilities Act, and the summary judgment properly written by the district judge in this case should be affirmed. Thank you, Counsel. Counsel, I have a question of a technical nature. Our clerk's office puts a docket sheet together for us and gives us a mandatory caption for the case. Your client is named as an individual, not as a corporation. In reading the briefs, I see the word ink after both parties' briefs. Am I dealing with a corporation, or am I dealing with an individual, and should the caption be corrected in the clerk's office? Yes, the caption should be a corporation. Do you have any reason to know how it got there erroneously? No, I don't, Your Honor. It would be Henry Schein, Inc. Inc. INC. That's the formal name of the company. Yes, Your Honor. If there's a judgment for costs or anything else, one way or another, I think we ought to have the right party there or some credit agency picks it up and hurts an individual. I don't think we want to hurt a Henry Schein out there who isn't a corporation. Okay. Thank you.      Thank you both for your arguments. The case just heard will be submitted.
judges: Farris, Beezer, Thomas